CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 17 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONELL J. BLOUNT, SR., | ) | CASE NO. 7:14CV00418 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| OFFICER FARMER, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant Farmer used excessive force by spraying him with OC spray and that Farmer and the other defendant officers acted with deliberate indifference to the risk that Blount would suffer harm without decontamination. Defendants have moved for summary judgment, and Blount has responded, making the matter ripe for disposition. After review of the record, the court concludes that the motion for summary judgment must be denied.

## Background

Blount, an inmate at Red Onion State Prison, alleges the following sequence of events. On April 20, 2014, at 11:48 a.m., Blount overheard Officer Farmer tell another officer that recreation was over for C-3 pod. Blount hit the door window with his hand and called to Farmer about recreation. When Farmer did not respond, Blount went to the back right corner of his cell. Farmer opened Blount's tray slot and sprayed OC gas on him. The gas struck Blount on the left side of his face, his neck, head, and left arm, which he raised to shield his face. The substance caused Blount's skin, eyes, nose, and throat to burn, and caused coughing, sneezing, and large amounts of mucus. He had to use his emergency asthma inhaler. Yet, because the gas did not hit Blount directly in his eyes, nose, or mouth, he was able to breathe and talk.

Farmer accused Blount of striking the sprinkler in his cell, which Blount denied. Officers Parks, Combs, Edwards, and Maiden[1] were near enough to the cell to see the effects of the gas on Blount, but left the area without decontaminating him. Blount tried unsuccessfully to wash off the gas in his sink and then "covered his cell door window to get medical care." (Blount Affid. ¶ 9, ECF No. 23.) When Sgt. Messer arrived, Blount told him that Farmer had sprayed him with OC spray for no reason and without decontamination. Farmer denied spraying Blount, but said he opened Blount's tray slot to restrain him. Blount was coughing, sneezing, and blowing mucus out of his nose. Two other inmates in nearby cells told Messer that Farmer had sprayed Blount.

Messer and Combs said they could not smell gas. About 35 minutes after Blount was sprayed with gas, Nurse Cox came to evaluate him. She noted on camera that the skin on his left arm and neck was red. She reported that she did not smell gas, but stated that her nose was stopped up by a cold. Messer had Blount escorted to the shower for decontamination, but the water was too hot for Blount to finish washing off the spray. Blount showed Messer spots of gas on his cell wall, floor, and bed, and asked for testing of his clothes for OC spray. He also asked Messer to remove him from the contaminated cell because of the remaining fumes. Messer refused. Blount's skin continued to burn from the gas into the next day.

Defendants offer a different version of events. The officers report that on April 20, about 11:45 a.m., Blount began kicking his cell door and rattling the window. Farmer came over to the cell and told Blount to stop being disruptive, and Parks told him to stop kicking his door. Farmer states that his canister of OC gas remained in his holster throughout his conversation with Blount, who continued kicking the door, cursed at staff, and covered his window. Officers called

---

[1] Blount identified two of the defendant officers as Parker and Madden. Defendants' evidence, however, indicates that their actual names are Parks and Maiden. The clerk will correct the docket to reflect these spelling changes.

2

Sgt. Messer. While they waited for the sergeant, Farmer ordered Blount to back up to the tray slot. Blount backed up as ordered, but as Farmer opened the tray slot, Blount walked away from the door. Combs, Edwards, and Parks, who were with Farmer, state that they did not see anyone spray gas on Blount and did not smell any gas in or around Blount's cell. Moreover, they report that Blount did not appear to be in any distress from OC gas, as he was able to yell and talk and showed no signs of having breathing difficulties, as would normally happen when the gas is sprayed. Messer also states that he did not smell OC gas from outside the cell door or, later, inside the cell, but nevertheless, he asked a nurse to examine Blount. The nurse observed that Blount did not appear to be in acute distress or to be having breathing difficulties.

## Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (omitting quotation).

"In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004); see also Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991) (at this stage of the proceedings, "[i]t is not [the court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to

disregard stories that seem hard to believe"). Where the record contains an unchallenged videotape capturing the events in question, the court must only credit the plaintiff's version of the facts to the extent that it is not contradicted by the videotape. Scott, 550 U.S. at 380; Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008).

**A. Excessive Force**

"[O]nly the unnecessary and wanton infliction of pain" rises to the level of an Eighth Amendment violation. Whitley v. Albers, 475 U.S. 312, 319 (1986). The court conducts an objective inquiry — whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry — whether a specific prison official "acted with a sufficiently culpable state of mind." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (omitting internal quotations).

The objective component of an excessive force claim focuses on "the nature of the force," which must be "nontrivial," Wilkins v. Gaddy, 559 U.S. 34, 39 (2010), and can be met by "the pain itself," even if the prisoner has no enduring injury." Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). The subjective component focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 5. Factors the court may consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the officers, and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321.

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency [and the Eighth Amendment] always are violated." Hudson, 503 U.S. at 9. It is well established that prison officials violate the Eighth Amendment when

4

they use pepper spray against an inmate in "quantities greater than necessary or for the sole purpose of infliction of pain." Iko, 535 F.3d at 240 (omitting citations); Tedder v. Johnson, 527 F. App'x 269 (4th Cir. June 12, 2013) (reversing grant of summary judgment on inmate's claim that officer pepper sprayed him for failing to obey order to return to his unit, where inmate posed no threat).

In his verified complaint and affidavit, Blount states that he did not kick his door or disobey orders before Farmer sprayed OC gas on him without warning. He also states that the pepper spray caused coughing, sneezing, excessive mucus, and a painful burning sensation on his skin that lasted for a whole day, even after he attempted decontamination in the shower. The video footage neither contradicts Blount's account nor confirms it in all material respects. Distance, and other officers grouped near Farmer, prevent the viewer of the surveillance footage from seeing all of Farmer's actions at Blount's cell window. The camcorder footage captures Blount talking normally, but also coughing and sneezing and describing a burning sensation on his skin. A reasonable fact finder, accepting Blount's sworn statements as true and viewing the footage, could conclude that Farmer sprayed OC spray on Blount with malicious and sadistic intent and not in any good faith effort to restore discipline and that his actions caused Blount serious pain and other discomforts. Accordingly, the court concludes that genuine issues of material fact remain in dispute for trial as to Blount's behavior, Farmer's actions, and the extent of Blount's pain from the OC spray, thus precluding summary judgment for Farmer on the excessive force claim.[2]

---

[2] Based on these material factual disputes, the court finds no merit to Farmer's assertion that he is entitled to summary judgment on the ground of qualified immunity in this case. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (finding that when resolution of the qualified immunity question and the case itself both depend upon determining what happened, summary judgment on qualified immunity grounds is not proper).

5

## B. Deliberate Indifference

Since the other defendants did not apply the force of which Blount complains, the court construes his claims against them as alleging their deliberate indifference to a substantial risk that delay in decontaminating Blount and placing him back in his cell would prolong his serious pain and other harm.[3] Blount also alleges a deliberate indifference claim against Farmer, for lying about the OC spray incident and otherwise delaying decontamination.

> The Eighth Amendment's prohibition against cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison officials are, therefore, obligated to take reasonable measures to guarantee inmate safety." Makdessi v. Fields, ___ F.3d ___, ___, 2015 WL 1062747, at *5 (4th Cir. Mar. 12, 2015). "For a claim based on a failure to prevent harm, the [prisoner] must [first] show that he was incarcerated under conditions posing a substantial risk of serious harm." Id. (internal quotation marks omitted). Next, the prisoner must establish that the prison official had "a sufficiently culpable state of mind," that is, "deliberate indifference to [the] inmate['s] health or safety." Id. (internal quotation marks omitted).
> 
> A prison official "is deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] knows of and disregards the risk." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (internal quotation marks omitted). However, "prison officials may not simply bury their heads in the sand and thereby skirt liability" by claiming that they were not aware of the risk. Makdessi, ___ F.3d at ___, 2015 WL 1062747, at *6. Finally, the prisoner must establish that the prison official's deliberate indifference caused his injury.

Thomas v. Young, No. 7:14CV00510, 2015 WL 3727012, at *1-2 (4th Cir. June 16, 2015) (citation omitted).

In Makdessi, the Court reemphasized that "deliberate indifference" is more than ordinary negligence, but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." 2015 WL 3727012, at *5 (quoting Farmer v. Brennan, 511

---

[3] Blount does not state facts showing that other officers had an opportunity to prevent Farmer from spraying the OC gas in Blount's cell. Therefore, the court finds no basis for a bystander liability claim against these officers related to Farmer's use of force. See Randall v. Prince George's County, Md., 302 F.3d 188, 204 (4th Cir. 2002) (holding that vicarious liability requires showing that officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act").

6

Case 7:14-cv-00418-GEC-PMS   Document 37   Filed 07/17/15   Page 6 of 7   Pageid#: 172

U.S. 825, 835 (1994) (citation omitted)). Furthermore, an officer's "knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Farmer, 511 U.S. at 842.

The court concludes that taking Blount's statements as true, he has presented circumstantial evidence from which a factfinder could reasonably infer deliberate indifference by the defendants to a substantial risk of serious, future harm. Blount told the officers that he had been sprayed with OC spray and that it was causing him serious pain, coughing, and sneezing, symptoms he also physically displayed, as seen in the camcorder footage. Yet, the officers waited some time to decontaminate Blount's skin in the shower and did not decontaminate his cell at all. Under Makdessi and Thomas, the court concludes that genuine issues of material fact remain in dispute for trial, including Farmer's actions, the causation and extent of Blount's purported pain and other symptoms, the officers' awareness of a significant risk of serious harm without decontamination, and the reasonableness of their response.[4]

For the stated reasons, the court will deny defendants' motion for summary judgment. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

ENTER: This 17th day of July, 2015.

*/s/ Glen E. Conrad*
Chief United States District Judge

---

[4] The court also concludes that these material disputes preclude summary judgment on the ground of qualified immunity on the deliberate indifference claim. Buonocore, 65 F.3d at 359.

7